## KELLOGG v. FINN.

A disputed quarter section corner of land as surveyed by the government not being otherwise established beyond a doubt, the government surveyor's field notes, giving the trend of the lines, together with the distances run, are material and competent.

Objection to a copy from the land office of the government surveyor's field notes, required by law to be recorded in such land office records, certified to by a party claiming to be the surveyor general, that a proper foundation had not been laid for its admission goes to the question of the identity of the party who signed the certificate, and to the proof of his signature.

Exclusion of a government surveyor's field notes in a case involving the location of a point in his survey was not harmless to plaintiff, though the surveyor who made a survey for him was allowed to testify that this agreed with said field notes.

A state court will take judicial notice of the inferior federal officers located within the state.

The certificate of the surveyor general to a copy from the land office of the field notes of a survey, required by law to be recorded in such office records, authorizes admission of the instrument without its being sworn to, or witnesses being called to testify that they had compared it and found it a true copy.

A new trial for newly discovered evidence, in a case involving the location of a quarter section corner by the government survey, should be granted for testimony of the government surveyor who made the survey, and who at the time of the trial was a government officer in Alaska, and who states that his survey was made exactly as set forth in his field notes; this evidence being more than cumulative.

(Opinion filed, January 27, 1909.)

Appeal from Circuit Court, Codington County. Hon. GEORGE MARQUIS, Judge.

Action by Charles C. Kellogg against James Finn. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*A. Sherin,* for appellant.

Whenever any book or other document is of such a public nature as to be admissible in evidence in its mere production from the proper custody, and no statute exists which renders its contents provable by means of a copy, any copy thereof or extract therefrom shall be admissible in evidence if it is proved to be an examined copy, or if it purports to be signed and certified as a true copy by the officer who has the custody of the original. 1st Greenleaf, 581.

Public Documents—Books of this public nature, being themselves evidence, when produced, their contents may be proved by an immediate copy duly verified. 1st Greenleaf, 579; Bryan v. Wear, 4 Mo. 106; Ridgway v. Farmers' Bank, 14 Am. Dec. 684. A sworn copy or exemplication of such originals is evidence, and the originals ought not to be removed from the governmental office. Gregory v. McPherson, 13 Cal. 562.

*George W. Case,* for respondent.

Certified copy of the field notes was not competent evidence, the same did not purport to be, and was not, a sworn copy, and the surveyor general of the United States for the state of South Dakota was not such an officer as can certify to an act of somebody else. Sec. 533, Code C. P. Stakes and monuments placed by the government surveyors to indicate the section corners and quarter section posts control in all cases where they can be found and identified, whether properly placed or not. Radford v. Johnson, 77 N. W. 601; McGray v. Monarch Elv. Co., 16 S. D. 109, 91 N. W. 457; Dowdle v. Connue, 9 S. D. 125, 68 N. W. 194; Coy v. Miller, 47 N. W. 1046; Hansen v. The Township of Red Rock, 4 S. D. 58, 57 N. W. 11; Randle v. Burk, 4 S. D. 337, 57 N. W. 4.

WHITING, J. This matter comes before the court upon an appeal from the judgment of the lower court, and from the order of said court denying an application for a new trial; said application for a new trial being made both upon errors which it is claimed occurred at the trial, and also upon newly discovered evidence.

This action is one brought by the plaintiff to recover of the defendant the possession of a certain piece of farm land; the said plaintiff being the owner of the NW¼ of section 15, and the defendant being the owner of the NE¼ of that section. The sole question in dispute is the true location of the boundary line between these two quarters; it being claimed by the plaintiff that the quarter corner on the north line of this section is to the east and south of the point claimed by the defendant, and also that the center of the section is a few feet to the east of the point as claimed by the defendant. Upon the trial of this case the evidence established without any question the location of the government

mounds and stakes on the southeast corner of said NE¼ and the southeast corner of the section, the quarter corner on the south side of the section and the southwest corner of the section, and the quarter corner on the west side of the section. There does not appear to be much dispute as to the exact location of the northeast corner of this section. At the northwest corner of the section there appears to be a lake bed, and one which was in such condition as to prevent the locating of the exact corner by mound at the time of the government survey. There was some evidence offered to show that mounds had been placed by the surveyor at the shore line of this lake bed to indicate where the lines of this section struck such lake bed.

Quite a number of exceptions were taken by the appellant upon the trial, but from the view we take of this case we deem it necessary to treat of but two matters; the first relating to the objections to what is known as "Exhibit 3," when the same was offered in evidence, and the other relating to the question of newly discovered evidence upon which a new trial is asked.

Exhibit 3 was a certified copy from the records of the Huron land office, being a copy of the government surveyor's notes required by law to be recorded in such land office records, certified to by party claiming to be the surveyor general; the part contained in Exhibit 3 being the notes in relation to the survey of the several boundary lines of this section 15, and it gave the trend of said lines as they varied from east and west and from north and south, together with the distances run. . Said notes also showed that the north line of this section was straight. If the plaintiff was right in his contention, and the disputed corner where he claimed, then this north line was far from straight, as the corner as claimed was quite a number of feet south of the point it would be if in a direct line between the northeast corner of this section and the established points at the western side of the section and on the north line of section 16. It is therefore apparent that unless the disputed corner could be otherwise established, beyond a doubt, these notes would be very material. Each plaintiff and defendant had as a witness a local surveyor. The one called by plaintiff testified to finding what he took to be the mound marking the disputed corner, and

claims to have discovered this mound several years before the trial of this action, and claims that he found a stake there; and the point that he testified as being this mound is the point claimed by plaintiff as the rightful location of the disputed corner. The surveyor on behalf of the defendant claims to have run the several lines in accordance with the methods pursued by the government, and that to assist in establishing the disputed corner, he went to adjoining sections, and found undisputed government mounds at points on these sections from which he claims he had a right to determine where the disputed corner was, and he testified that he followed the field notes of the government surveyor, and that he located the disputed corner where the defendant claims it should be located. We would say in passing that the location of the center of the section depends entirely upon the location of the disputed corner above referred to, because it seems admitted that the proper boundary lines between these farms would run from whatever is the true location of the disputed corner to the undisputed quarter corner on the south line of the section. There were witnesses, called by both parties, from the older residents still living in this vicinity, to show, in so far as possible, whether there had ever been a well-established government mound at the quarter corner on the north line of this section, and these witnesses differed very materially in their testimony. Some of the testimony would tend to show that the surveyor called by the plaintiff was mistaken in believing that the mound he discovered was a government mound.

Exhibit 3 was offered in evidence at the time the defendant was introducing his original case. Several objections were made thereto, including the objection that a proper foundation had not been laid for the admission of this instrument. This objection, of course, would go to the question of the identity of the party who signed the certificate to said Exhibit 3, and to the proof of his signature. There was no evidence on either of these points, and, unless this court will take judicial notice of who occupies the office of surveyor general in this state, and of his signature, the objection was good. Previous to this offer the defendant had offered Exhibit 3 in evidence, and the sole objection at that time was upon the ground that said exhibit was incompetent. The court excluded

the exhibit both times the same was offered. There can be no question but what, if the proper foundation was laid, this exhibit was competent; it being strong proof as to where the original corner was located. If such corner was located in accordance with said field notes, it could not have been at the point claimed by the plaintiff. The respondent claims that, even if this exhibit should have been received in evidence, its exclusion was unprejudical, for the reason that the surveyor called by the defendant was allowed to testify fully in relation to the manner he surveyed this land, that he testified that the line he ran for the north boundary of the section was a straight line entirely across the north side of the land, and that he further testified that this agreed with the field notes, and that for that reason the material part of the field notes was before the jury uncontradicted. We do not think, however, that it can be claimed that the exclusion of this evidence, so strongly corroborative of the contention of the defendant, was cured by this secondary proof of what the field notes showed. Certainly the defendant must have been injured by the exclusion of this exhibit.

This leaves the one question as to whether it was wrongful to exclude the exhibit on the ground that no proper foundation had been laid. While no hard and fast rule has been laid down as to what officers the courts should take judicial notice of, especially as regards officers other than those of the state or of the county wherein the court is holden, yet the authorities seem to be unanimous that the more important federal officers will be taken judicial notice of by the court, and we believe the rule laid down in 1 Greenleaf on Evidence, § 6, is fully sustained by the authorities, which rule is: "Courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction." This rule was quoted and approved in the case of Wetherbee v. Dunn, 32 Cal. 106, and seems to be upheld in 1 Elliott on Evidence, § 53, and in 7 Ency. of Evidence, 977. In the case of Lerch v. Snyder, 112 Pa. 161; 4 Atl. 336, as well as in some of the authorities above cited, the court holds this rule should extend to those federal officers located in, and whose duties pertain to, the territory comprised within the jurisdictional limits of the court; or, when applied to our circuit courts, that such circuit courts

should take judicial notice of those federal officers located within the borders of our state, but not of the lesser federal officers located within other states. And in the case of Lerch v. Snyder, applying this rule, the court held that judicial notice could be taken of the internal revenue collector, both as regards his official character, and also as regards his official acts. We feel that this is a safe rule to follow: That when it comes to the question of federal officials, the courts should take judicial notice of all persons occupying the more important positions, no matter where said officials are located, and that as relates to the inferior federal officials the court should take judicial notice of who occupies the federal offices located within the limits of our state.

The respondent claims in his brief that Exhibit 3 was properly rejected because it was neither sworn to, nor were there witnesses called to testify that they had compared it with the original record and found it a true copy. Neither of these grounds is tenable. The law seems to be well established that a mere certificate from an official having the custody of records is sufficient where the instrument is otherwise admissible, and upon this point we would cite 1 Greenleaf on Evidence, §§ 483-485, 493.

The motion for new trial was also based on the ground of newly discovered evidence, shown by the affidavits of several persons, which evidence would consist of the testimony of several persons who had formerly lived near this land, but had since removed from the neighborhood, but the most important piece of evidence being that of the government surveyor who made the original survey, and who at the time of the trial was a government official in Alaska, but who had since returned to his home in Sioux Falls in this state and who states in his affidavit that his survey was made exactly as set forth in his field notes, and that the north line of this section was straight. If the jury should believe this statement from a witness upon the stand, or should believe the field notes, then the disputed corner could not possibly be where claimed by respondent. We fully recognize the rule laid down in the case of Scheffer et al. v. Corson et al., 5 S. D. 233, 58 N. W. 555, to the effect that it is only under exceptional or unusual circumstances that a new trial will be granted on the ground of newly

discovered evidence going only to discredit or impeach a witness, or which is merely cumulative, but we think this case fairly illustrates a proper exception to this rule. This evidence is more than cumulative. It seems to us to be almost absolutely conclusive, and when we consider the further fact that this motion for new trial was urged before the judge who succeeded the trial judge, and who did not have the knowledge of this case that the trial judge had, and who perhaps would feel some hesitancy in granting a new trial when he had not presided at the trial, we think it is clear that to promote the ends of justice a new trial should be granted herein.

It is therefore the judgment of this court that the judgment of the lower court and the order denying a new trial be reversed.